# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 04 2019, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ernest P. Galos
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of C.M., J.M., V.M., L.M., and E.M. (Minor Children); | December 4, 2019 |
| | Court of Appeals Case No. 19A-JT-1724 |
| J.O.M. (Father), | Appeal from the St. Joseph Probate Court |
| *Appellant-Respondent,* | The Honorable Jason A. Cichowicz, Judge |
| v. | The Honorable Ashley Mills Colborn, Magistrate |
| Indiana Department of Child Services, | Trial Court Cause Nos. 71J01-1811-JT-154 71J01-1811-JT-155 71J01-1811-JT-156 71J01-1811-JT-157 71J01-1811-JT-158 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

J.O.M. ("Father") appeals the trial court's termination of his parental rights over C.O.M., J.M.M., V.E.M., L.M., and E.M. ("the Children").[1]  Father raises a single issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to show that there is a reasonable probability that the reasons that resulted in the removal of the Children from Father's care will not be remedied.  However, while the trial court did conclude that DCS had presented sufficient evidence on that issue, the court additionally, and independently, concluded that DCS had also presented sufficient evidence to show that the continuation of the parent-child relationships poses a threat to the well-being of the Children.  As a matter of law, the court's second conclusion independently supported the termination of Father's parental rights.  Ind. Code § 31-35-2-4(b)(2)(B) (2019).  Accordingly, Father's failure to challenge the trial court's conclusion that the continuation of the parent-child relationships poses a threat to the well-being of the Children requires us to affirm the court's termination of his parental rights over the Children.

---

[1] The Children's mother does not participate in this appeal.

# Facts and Procedural History

On DCS's petitions, in May of 2019 the trial court held an evidentiary hearing on whether to terminate Father's parental rights over the Children. Following that hearing, the court entered the following findings and conclusions in an especially detailed order:

> 2. There is a reasonable probability that the conditions that resulted in the removal of [the Children] and their continued placement outside of the home will not be remedied.
>
> > a. DCS family case manager Margaret Batteast testified that [the Children] were removed from the care of . . . Father due to lack of housing. Mother and Father had placed the [C]hildren in the care of the paternal grandmother, who was unable to continue caring for the [C]hildren without the support of the parents. FCM Batteast testified that the [C]hildren's Medicaid had lapsed, the [C]hildren's vaccinations were not up to date, and [L.M.] was in need of glasses which he did not have.
> >
> > b. After the initial removal, Father tested positive for methamphetamine. Father tested positive for methamphetamine throughout the duration of the CHINS case.
> >
> > c. Father did complete a substance abuse program through his probation. However, . . . Father continued to test positive for methamphetamine.
> >
> > d. Father denied using methamphetamine. However, this Court does not find that testimony credible. . . .

e. As a result of Father's failure to abstain from methamphetamine usage, he is now facing revocation of his probation which carries a maximum sentence of 540 days of incarceration.

* * *

g. Father's compliance in services offered by DCS has been minimal at best. At the time of the termination hearing, Father had failed to complete, or even start, individual therapy. Father had attended only two (2) classes out of forty (40) classes for the Batterer's Intervention Program.

h. While Father did complete an intensive outpatient substance abuse program, he continues to test positive for methamphetamine.

* * *

j. Father's failure to meaningfully participate in and benefit from services demonstrates a reasonable probability that the conditions that resulted in the [C]hildren's removal will not be remedied. Although Father did complete a parenting course and an intensive outpatient treatment program, he has not shown growth or any measurable benefit from either. Father continues to test positive for methamphetamine, has yet to complete any individual therapy, and has failed to substantially participate in the Batterer's Intervention Program.

k. Father did testify that he now had completed a parent education class, obtained appropriate housing, and is employed. However, Ms. Nandi Butler, the parent

educator for Father's parenting classes, credibly testified that Father began the ten (10) week parenting course in March 2018 and did not finish until March of 2019. She further credibly testified that it appeared that Father was "just going through the motions."

l. Father's minimal efforts to comply with the Dispositional Decree mere weeks before the termination [hearing] does not rectify the history of Father's failure to comply with services or to demonstrate any meaningful change in his substance abuse. . . .

3. There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of [the Children].

a. FCM Batteast, Mr. Prospers, and Shauna Cameron, the [C]hildren's CASA, testified at length about the multitude of mental health issues [the Children] suffer from, including PTSD and anger management issues.

b. Ms. Cameron testified that all five (5) of the [C]hildren have disclosed emotional abuse, physical abuse, and substance abuse by Father. Ms. Cameron further testified that [two of the Children] disclosed sexual abuse by [a] sibling . . . .

c. Father has stated he does not know if he believes that [the two children] were sexually abused by [the third], which is very much a threat to the well-being of [the C]hildren and their safety.

d. Ms. Cameron testified that she believes a continuation of the parent-child relationship poses a threat

to the well-being of the [C]hildren because of Father's continued drug use. Further, Ms. Cameron credibly opined that she would be concerned about all five (5) [C]hildren residing together, an opinion that was also echoed by Mr. Prospers, the [C]hildren's former therapist.

e.      Ms. Cameron testified that the five (5) [C]hildren together are triggers for each other. Mr. Prosper further testified that he would have concerns if all five (5) of the [C]hildren were placed in the same home because of the amount of trauma the [C]hildren have experienced. Mr. Prospers credibly opined that [one child] needs individual care to help him process the trauma he experienced. Further, Mr. Prosper testified that [another child] cannot live with her siblings again because she experiences panic attacks within fifteen (15) to twenty (20) minutes of exposure to her siblings.

f.      Father testified that his plan would be for all five (5) of his [C]hildren to be placed together in his care, a plan that would pose a substantial threat to the [C]hildren's mental well-being.

g.      FCM Batteast testified that she too believed that the continuation of the parent-child relationship would pose a threat to the well-being of [the Children] because of the [C]hildren's mental health needs and the trauma they experienced while in Father's care.

h.      . . . [T]he substantial amou[n]t of trauma the [C]hildren experienced while residing in Father's care, coupled with Father's failure to substantially comply with services or maintain sobriety, demonstrates that there is a threat to the [C]hildren's emotional and physical

development if the parent-child relationship[s] w[ere] to continue.

[i].    Father's physical abuse of the [C]hildren, combined with his failure to complete the Batterer's Intervention Program and failure to maintain his sobriety, coupled with the [C]hildren's extensive mental health and caregiver needs[,] demonstrate by clear and convincing evidence that the continuation of the parent-child relationship constitutes a threat to the well-being of [the Children].

Appellant's App. Vol. II at 23-24 (citations omitted). The court concluded that DCS had met its burden under Indiana Code Section 31-35-2-4 to show that the termination of Father's parental rights over the Children was proper, and the court ordered the termination of those rights accordingly. This appeal ensued.

# Discussion and Decision

[3]    Father appeals the trial court's termination of his parental rights over the Children. The court's termination order recites findings of fact and conclusions thereon following an evidentiary hearing before the court. As our Supreme Court has explained, in such circumstances

[w]e affirm a trial court's termination decision unless it is clearly erroneous; a termination decision is clearly erroneous when the court's findings of fact do not support its legal conclusions, or when the legal conclusions do not support the ultimate decision. We do not reweigh the evidence or judge witness credibility, and we consider only the evidence and reasonable inferences that support the court's judgment.

*M.H. v. Ind. Dep't of Child Servs. (In re Ma.H.)*, ___ N.E.3d ___, No. 19S-JT-323, 2019 WL 5617008, at *2 (Ind. Oct. 31, 2019) (citations omitted).

[4]     "Parents have a fundamental right to raise their children—but this right is not absolute." *Id.* "When parents are unwilling to meet their parental responsibilities, their rights may be terminated." *Id.* To terminate parental rights, Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to demonstrate the following, among other requirements not relevant here:

> that *one* (1) of the following is true:
>
> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services . . . .

(Emphasis added.) As that statutory text makes clear, only one of those three prongs needs to be satisfied in order to support the termination of parental rights. Here, the trial court expressly found that two of the three prongs were satisfied—that there is a reasonable probability that the conditions that resulted in the Children's removal will not be remedied, and that there is a reasonable

probability that the continuation of the parent-child relationships poses a threat to the well-being of the Children.

[5] On appeal, Father's only argument is that the trial court erred when it terminated his parental rights because, according to Father, the evidence does not show that the conditions that resulted in the Children's removal will not be remedied. Father's argument is, as a matter of law, insufficient to demonstrate reversible error. Whatever the merits of the argument he presents on appeal, the fact remains that the trial court's separate conclusion that the evidence *also* supported the termination of Father's parental rights under Indiana Code Section 31-35-2-4(b)(2)(B)(ii) is unchallenged. Father has not met his burden on appeal to demonstrate reversible error.

[6] Father's failure to argue both prongs of Indiana Code Section 31-35-2-4(B)(2)(B) notwithstanding, DCS presented sufficient evidence to show that the conditions that resulted in the removal of the Children would not be remedied. Father's argument on appeal is merely a request for this Court to reweigh the evidence, which we cannot do. *In re Ma.H.*, 2019 WL 5617008, at *2. Accordingly, we affirm the trial court's termination of Father's parental rights.

[7] Affirmed.

Vaidik, C.J., and Tavitas, J., concur.